# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JOHN JOSEPH THOMAS ROUSE,

    Plaintiff,

    v.

MARIAN FOGAN,
DR. SCOTT MORAN,
DR. SAMEER PATEL,
DR. MICHELLE CARTER and
DR. KATHLEEN PATCHAN,

    Defendants.

Civil Action No.  TDC-21-1562

## MEMORANDUM OPINION

John Joseph Thomas Rouse, a former pretrial detainee who was found not competent to stand trial and thus detained at the Clifton T. Perkins Hospital Center ("Perkins") in Jessup, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges that Defendants, employees of Perkins, violated his constitutional rights, including by placing him in isolation during the COVID-19 pandemic, misdiagnosing him with mental illness, and evaluating him to be incompetent to stand trial and thereby prolonging his confinement at Perkins. Pending before the Court is a Motion to Dismiss, or in the Alternative, for Summary Judgment filed by Defendants Marian Fogan, Dr. Scott Moran, Dr. Sameer Patel, Dr. Michelle Carter, and Dr. Kathleen Patchan. Although Rouse was provided with notice of the Motion and of his right to file a brief in opposition to it, he has not done so. Having reviewed the submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

On October 18, 2020, Rouse sent threatening emails to an attorney involved in the administration of his family's estate. He was charged in the District Court of Maryland for Carroll County, Case No. D102CR20001221, with two counts of harassment. On February 24, 2021, Rouse was referred for a competency evaluation, which was conducted on March 3, 2021. In that evaluation, Rouse was diagnosed as "manic with grandiose delusions" and deemed incompetent to stand trial. Aug. 2021 Competency Eval. at 3, Mot. Dismiss Ex. 1, ECF No. 8-2. On April 28, 2021, after being found not competent to stand trial by the Circuit Court for Baltimore County, Maryland in a separate case, Case No. C-03-CR-21-000809, Rouse was admitted to Perkins.

Rouse alleges that Dr. Patchan, a clinical psychiatrist at Perkins, placed him in isolation for a period of 15 days after his April 28, 2021 admission. According to Dr. Patchan, Rouse tested positive for COVID-19 at the time of his admission, and he was placed in quarantine pursuant to Perkins policy in order to protect staff and other patients from contracting COVID-19. Rouse tested negative on April 30, 2021, but he remained in isolation until May 10, 2021, to ensure that he was symptom-free before he was placed on a ward. While in isolation, Rouse was permitted to have telephone calls with his family. In Rouse's view, the COVID-19 test produced a false positive, so his quarantine was improper.

Dr. Patchan was Rouse's treating psychiatrist from April 28, 2021 to May 13, 2021. Rouse was diagnosed as having Bipolar Disorder with psychotic features. His symptoms included "loud, hyper-talkative, pressured speech, grandiose, paranoid and poor/limited insight into his need for treatment." Patchan Aff. ¶ 7, Mot. Dismiss Ex. 5, ECF No. 8-6. He expressed the belief that his admission to Perkins was based on a conspiracy among court personnel. Dr. Patchan prescribed psychiatric medications, which Rouse took inconsistently. On May 13, 2021, Rouse was

2

transferred to another ward after a physical altercation with another patient. At that point, he was under the care of Dr. Carter, who met with him for an evaluation on at least one occasion.

On May 20 and 25, 2021, Dr. Patel, a staff psychiatrist at Perkins, evaluated Rouse in order to determine his competency. In his report, Dr. Patel recounted certain statements previously made by Rouse, including using the name Honesus Bellata El, asserting that he "own[s] Maryland," claiming that his grandfather is the Chief Justice, asserting that the laws of the United States do not apply to him because he is a sovereign citizen, and threatening to sue a competency evaluator. May 2021 Competency Eval. at 11, Compl. Ex. 2, ECF No. 1-2. Dr. Patel concluded that Rouse had manic and psychotic symptoms and was incompetent to stand trial.

In July 2021, Rouse's diagnosis was changed to "rule out" Bipolar I Disorder because "there was limited evidence of a major mood disturbance even while unmedicated." Aug. 2021 Competency Eval. at 4. On August 11, 2021, a different psychiatrist conducted a competency evaluation of Rouse and concluded that he was then competent to stand trial. On September 3, 2021, the court found Rouse competent to stand trial and remanded him to Perkins to maintain his competency.

In January 2022, Rouse pleaded guilty to the misdemeanor charge of "Threat of Mass Violence" and received a sentence of ten years, all suspended, with five years of probation. Dkt. at 2–3, Mot. Dismiss Ex. 3, ECF No. 8-4. As a result of his plea, Rouse was released from Perkins on January 19, 2022.

In the Amended Complaint, Rouse denies that he suffers from a mental illness and generally alleges that Defendants violated his rights by keeping him detained at Perkins for several months based on false diagnoses and competency evaluations. First, he alleges that Dr. Patchan's imposition of the 15-day quarantine upon his admission to Perkins based on his positive COVID-

3

19 test result was improper and violated his rights. He also alleges that Dr. Patchan's finding that he had symptoms "consistent with Bipolar Disorder, MRE Manic without Psychotic Features" was false and fraudulent, and that she made improper efforts to forcibly medicate him. Am. Compl. at 1–2, ECF No. 5.

Rouse claims that Dr. Carter, his second treating psychiatrist at Perkins, made "not only immoral but extremely unethical" statements in her evaluation of Rouse when she reported that Rouse "made grandiose claims and demonstrated symptoms consistent with bipolar affective disorder, also that [he] demonstrated personality traits that may eventually lead to a diagnosis of a personality disorder." *Id.* at 3. Rouse also takes issue with Dr. Carter's statement that he was "uncooperative and legally inclined." *Id.*

Rouse alleges that Dr. Patel, in conducting the May 2021 competency evaluation, made untrue statements and therefore is one of the "primary tortfeasor[s] responsible for placing a toll on [his] right to due process." *Id.* at 3–4. As to Dr. Moran, the Clinical Director of Perkins, Rouse alleges that Dr. Moran was a part of a scheme designed to keep him at Perkins and that he was responsible for sending the competency evaluation to the court, which constituted "fraud in the inducement and fraud on the [Court]." *Id.* Finally, as to Fogan, who is the Chief Executive Officer of Perkins, Rouse contends that she is liable under the "Respondeat Superior Doctrine" for the conduct of all Perkins employees. *Id.* at 5.

At various points in the Amended Complaint, Rouse alleges that one or more of Defendants engaged in fraud, negligence, violations of the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. § 1346 (2018), and violations of his rights under the Fifth and Eighth Amendments to the United States Constitution. He requests damages and a formal letter of apology.

4

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants argue that: (1) Rouse's claims are legally frivolous; (2) Defendants Fogan and Moran are entitled to dismissal because the doctrine of *respondeat superior* does not apply to § 1983 claims; (3) Rouse has not alleged facts sufficient to state a valid claim of violations of due process; (4) Defendants are entitled to qualified immunity; and (5) based on the submitted evidence, Rouse received due process.

## I.   Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants have attached multiple exhibits to their Motion for the Court's consideration. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents attached to that pleading. *Sec'y of State for Def. v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a

motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Rouse did not respond to Defendants' Motion and thus has not asserted that he needs additional discovery in order to address that Motion. The Court will therefore construe the Motion as a motion for summary judgment as to those arguments requiring consideration of the attached exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522

6

(4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II.     *Respondeat Superior*

Defendants first argue that any constitutional claims against Fogan and Dr. Moran, which are fairly construed as claims asserted under 42 U.S.C. § 1983, must be dismissed because Rouse does not assert facts demonstrating that they personally took actions to violate his rights. The doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Under § 1983, any liability imputed to supervisory officials must be "premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) "the supervisor had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff"; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Rouse has failed to plead or demonstrate facts showing that Fogan or Dr. Moran had any actual or constructive knowledge of his treatment and evaluations while he was at Perkins. Accordingly, the § 1983 claims against Fogan and Dr. Moran will be dismissed.

## III.   Due Process

Although Rouse references the Fifth and Eighth Amendments, because he was a pretrial detainee and an involuntarily committed patient at a state psychiatric facility, his constitutional claims are properly construed as asserted under the Due Process Clause of the Fourteenth Amendment. *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988); *Youngberg v. Romeo*, 457 U.S. 307, 315– 16 (1982); *Patten v. Nichols*, 274 F.3d 829, 837 (4th Cir. 2001). Because they have not been convicted of any crime, pretrial detainees may not be subjected to punishment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). To establish that a particular condition or restriction of detention constitutes impermissible punishment in violation of the Fourteenth Amendment, a plaintiff must show either (1) an expressed intent to punish or (2) that the restriction was not reasonably related to a legitimate non-punitive governmental purpose. *Martin*, 849 F.2d at 870.

In the case of involuntarily committed patients at state psychiatric facilities, the United States Supreme Court has provided additional guidance. Under *Youngberg*, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Id.* at 321– 22; *see Patten*, 274 F.3d at 837–38 (applying the *Youngberg* standard to involuntarily committed psychiatric patients). Under the *Youngberg* standard, a state must provide such an involuntarily committed patient with reasonable conditions of safety, including "adequate food, shelter,

8

clothing, and medical care," as well as "freedom from unreasonable restraints." *Youngberg*, 457 U.S. at 315, 321.

In assessing whether conditions are constitutionally adequate, courts apply the "professional judgment" standard, under which "the Constitution only requires that the courts make certain that professional judgment in fact was exercised." *Id.* at 321. Decisions made by medical or other professionals are presumptively valid, and "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323; *see Patten*, 274 F.3d at 845–46 (stating that the defendant's actions must have "so substantially departed from professional standards that their decisions can only be described as arbitrary and unprofessional").

### A.     Conditions of Confinement

Rouse first asserts a constitutional violation arising from his placement in quarantine upon his arrival at Perkins, from April 28, 2021 until May 10, 2021. The process for admission to Perkins provided for COVID-19 testing and quarantine scenarios "to maintain as healthy and safe environment as possible for our current inpatient population and staff." *See* Md. Dep't of Health Letter at 1, Mot. Dismiss Ex. 4, ECF No. 8-5. In light of the serious health risks of the COVID-19 crisis, and even with Rouse's claim that his test result was a false positive, the placement of Rouse in isolation for a period of 12 days following his initial positive COVID-19 test on April 28, 2021 did not violate his Fourteenth Amendment rights. Where this decision was reasonably related to the legitimate non-punitive governmental purpose of avoiding an outbreak of a deadly disease within the facility, it did not constitute improper punishment and was plainly within the range of professional judgment. *Martin*, 849 F.2d at 870; *Youngberg*, 457 U.S. at 323.

To the extent that Rouse complains more generally about his privileges or programming while detained at Perkins, he has not alleged, much less demonstrated, that any of the decisions regarding his security, privileges, or programming were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323.

### B.    Medical Care and Evaluations

Construed liberally, the Amended Complaint alleges that Dr. Patchan, Dr. Carter, and Dr. Patel provided inadequate medical care in that they made false or fraudulent diagnoses and evaluations of his mental health condition and competency, and that as a result, he remained detained at Perkins longer than necessary.

Upon consideration of the allegations in the Amended Complaint and the materials submitted by Defendants, there is no basis to conclude that any of these Defendants made their diagnoses or evaluations with the intent to punish Rouse or to detain him any longer than necessary. Although the diagnosis of having Bipolar Disorder and the evaluation of incompetency changed over time, the submitted records provide no basis to conclude that Defendants' determinations were not the product of professional judgment, or that there was a "substantial departure from accepted professional judgment." *Youngberg*, 457 U.S. at 323. Indeed, where Dr. Patel's finding of incompetency was consistent with an earlier February 2021 evaluation, it may well have been accurate at that the time it was performed and plainly fell within the range of professional judgment.

Although Rouse maintains that he did not need medication and alleges generally that he was forcibly medicated, he has not alleged facts that could support a constitutional violation. Although Dr. Patchan prescribed medication, she has stated in her declaration that those

medications were the standard of care for his diagnosed mental illness, and this claim has not been refuted. The decision to prescribe medication was thus within the range of professional judgment. Although an involuntarily committed patient in a psychiatric facility has a "significant constitutionally protected liberty interest" in avoiding forced administration of antipsychotic drugs, *Sell v. United States*, 539 U.S. 166, 178 (2003), there is no evidence that Rouse was forcibly medicated. Rouse's constitutional claims relating to his medical care and evaluations therefore fail.

## C.    Discharge

Finally, to the extent that Rouse argues that his detention at Perkins for several months under findings of incompetency deprived him of his liberty without due process of law, this claim also fails. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). In this case, the process due to Rouse is governed by procedures set forth in Maryland state law, which he has not challenged as failing to comport with due process. *See* Md. Code Ann., Crim Proc. § 3–108 (LexisNexis 2018). He has neither alleged nor established that the actual process followed, including the multiple competency evaluations performed throughout his confinement at Perkins, deviated from those requirements. He was therefore lawfully held at Perkins until his competency was restored, after which he pleaded guilty and was sentenced in the Circuit Court for Baltimore County. The Court will therefore grant summary judgment on Rouse's constitutional due process claims and thus need not address Rouse's other grounds for dismissal of these claims, including qualified immunity.

11

## IV.    Remaining Claims

Although Rouse has not clearly articulated other claims, the Amended Complaint at various points references the FTCA, fraud, and negligence. Any FTCA claim will be dismissed because that statute applies only to the actions of employees of the federal government, and none of Defendants are federal employees. 28 U.S.C § 1346(b)(1); *Medina v. United States*, 259 F.3d 220, 223 (4th Cir. 2001). The Court also finds that the allegations are insufficient to establish plausible claims for fraud or negligence, *see* Fed. R. Civ. P. 8(a), 9(b), and that the submitted evidence establishes that there is no genuine issue of material fact on any such claims, so the Court will grant the Motion as to all claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED. A separate Order shall issue.

Date:  March 8, 2023

THEODORE D. CHUANG
United States District Judge